309 Omega Patents v. CalAmp Corp. The judgment in this case is the result of a number of errors, starting with claim construction. The District Court construed two claim limitations, the data bus and transmitter receiver limitations too narrowly by reading in requirements that are not there. That restricted CalAmp's invalidity defenses by narrowing the scope of the prior art that was relevant. On page 8 of the Blue Brief, you state that Omega also repeatedly noted that it had sued Directed Electronics, a company you say unrelated to CalAmp. Was that information before the jury? And if so, how was it admitted into evidence? It was before the jury, and I will confess that I don't believe we objected to it. Probably should have, but didn't, which is why we didn't raise it on appeal. It came out in the testimony of the inventor, Mr. Flick. I see. The court refused to construe a third term that appears in all of the asserted claims vehicle device, even though it acknowledged that the term is defined in the specifications and that CalAmp's proposed construction was verbatim, I think is the word the court used, taken from the specification. That allowed Omega and its expert to spin out an infringement theory that really turned the claims upside down and turned what should have been clear evidence of non-infringement into an entirely new theory. The claim constructions at a minimum require a new trial, and we actually believe Omega failed to prove infringement even as construed. Do you want us to interrupt you as you go along? You have a summary you're going to finish momentarily? I want you to interrupt me. OK, I'm going to interrupt you. On that point, I understand what you're saying, but you offered a claim construction. Do you make an argument in your briefs how even if the court had adopted the claim construction that you proposed, it wouldn't? Well, why can't under your claim construction the LMU still be a vehicle device, which is, I think, at the heart of what I understand your argument to be about. Yes, as to that term, the LMU under Omega's infringement theory, all the claims require a multi-vehicle compatible controller. According to Omega, that's the LMU. That's our product. The way vehicle device is defined in the specifications is it is the device that is to be controlled or have the status thereof read. The controller is what is doing the controlling. So you can't be both the controller and the thing the controller is controlling. The other place it enters into is I think three of the patents require particular use of device codes. Device codes was construed by the district court to mean signals from a vehicle device. And what Omega's infringement theory, infringement expert, continually referred to was signals from the LMU, which is the controller, as being these device codes. When they can't be, given that construction, unless you improperly say the LMU is a vehicle device, which had that term been construed as it was defined in the patents, could not be the case. So it seems to me that this word vehicle device comes up in different claims. In some claims it's used with vehicle device code and in other claims it's used without vehicle device code, correct? Correct. And it seems to me that you have a pretty good argument that with respect to the vehicle device code claims, that their primary reliance was on the signal coming from the LMU. So if the LMU is not a vehicle device, that's not tenable infringement theory. I understand that. Address for me the claims that don't talk about vehicle device code but just about vehicle device, where it seems to me that the primary theory was that the EMU was the vehicle device rather than the LMU. The ECU, the engine control unit. The vehicle device claim construction issue affects claims in the 278, 876, and 885 patents that have the device code limitation as well. It doesn't affect claims, and I think this is where you're going. It doesn't affect, there are a couple of claims in the 876 and the claims in the 727 that don't require the use of device codes. So even though vehicle device appears in those patents, I don't think you have the same infringement related problem as to those. So your argument is only with respect to the claims that have vehicle device code in them? As to that claim term. Correct. I understand. As to vehicle device, you argued that the court erroneously refused to construe it, but it's not in the, the colloquy about that doesn't seem to be in the record. Why not? Well, it was in the Markman, it was in the Markman ruling. And where the judge laid out, Cal-Am proposes its construction, it comes directly from the specifications, and therefore I don't need to construe it. So in the record, in the JA, it's 18621 to 18674, but it's incomplete. There's pages missing and so on. And it doesn't seem that the parties include the discussion with the district court about vehicle device. Yeah, apparently we must not have cited that passage in the briefs, but it seemed it was. Is it in the record? I mean, because I couldn't. Oh, well, it's in, yes, it certainly is in the record. The entire transcript's in the record, so it's in there. It just didn't get reproduced in the joint appendix. Right. I just want to say it's not in the JA, though. Right, right. No, that's correct, Your Honor. But it was discussed at the Markman hearing that's in the transcript, and it's reflected in the Markman order. The judge basically recounts the arguments and says I'm not going to construe it. I actually do think it's in the appendix at 146. Oh, that's the actual Markman ruling, Your Honor. I think what Judge Wallach was referring to was the hearing, the actual transcript. Now, as Omega acknowledges in its brief, if any of the underlying liability findings is set aside, the willful infringement finding needs to be reconsidered as well. Okay, but before we get to willful infringement, can we deal with damages? Is that not the case on damages? Is it not true that on the record, if there's an indication that one of the many claims was infringed, then the royalty rate and the damages would hold, assuming that they hold up for other reasons, but that the damage is all or nothing kind of thing? That was one expert, only one expert. He testified to that. It seems to be clear, right? Well, he testified that a single royalty would apply across the board. We believe that if any of the underlying infringement findings are disturbed, damages need to be reconsidered because it was basically a general verdict as to damages. It wasn't broken down by patent, and if you undercut the infringement findings as to any of these, we think damages need to be reconsidered. I mean, I'll ask the other side, but I thought there was unrebutted testimony by an expert that said all or nothing kind of, if any one is, regardless of how many claims were infringed. So even if you find one infringed claim, the damages hold. Well, I think it's important to focus on it. What he said was Omega's position in negotiating licenses is to ask for a single royalty across the board. He didn't say as a matter of economic analysis this is where I came out. This would be their negotiating position, and it is refuted by their own license agreements, which are in the record, which provide different royalty rates for different patents. There's a jury charge transcript, 16497 of the JA, and didn't the court say that all the evidence at trial was that the royalty would be the same whether one patent was infringed or whether all were infringed, and the parties agreed to that. That's the only point I'm making. Well, and you're certainly right about what the trial court said, and my point is that what the trial court was referring to was their expert getting up and saying, yeah, that's what Omega wants, that's what they would ask for, but with no underlying analysis and the actual evidence of the agreements themselves actually provide different royalty rates for different products and different patents. So the jury didn't have to agree with that presentation is what you're saying. Yes, correct. So we can't be sure that the jury reached the result for which they were arguing. Exactly, Your Honor, exactly. Now, if I could turn, with the court's permission, to willful infringement. Well, although I have one more question. Sure. Sorry about that. But on the, well, I was going to say comparable licenses, but obviously your view was that they weren't comparable. Why didn't you do a Daubert motion? I mean, so you didn't. The licenses were in, and then why is it not? I mean, even if I might find your arguments to the lack of comparability very compelling, I wasn't on the jury. So why, given that the evidence comes in, is allowed in, given that you have the opportunity to cross-examine or put on your own witness, which I guess you didn't because your expert was excluded, why do we still have to go along with the jury? Well, Your Honor, I think evidence can come in with or without an objection. That doesn't make it sufficient. There's still a separate question about whether it's sufficient. And here, the evidence of non-comparability is really compelling because you're dealing with their two main licenses. One of them covered 47 patents. The other one covered, I think, 86 patents, disparate technologies with different royalty rates for things like remote start capability, which we don't have, alarm systems, which we don't have. Well, you made all those arguments to the jury. We made those arguments, but on this record, we think the evidence is clearly insufficient because these are not comparable. Didn't they have something more than those licenses? They had a basket of other than those two, sure. They refer generally to some other licenses, but they have the same problems. There are dozens of patents. All of them were litigation settlements, and they also show that different royalty rates apply to different kinds of patents and different products. So they were not a focus of trial, but all the same arguments apply to them. So what you're saying is the only damages support was these licenses, which you argue were non-comparable. Correct. Correct, Your Honor. Now you can turn to willfulness. Now on to willfulness. Willfulness would need to be reconsidered. I think Omega concedes if any of the underlying findings are disturbed. But even apart from that, the serious problem here is that the facts are that CalAMP did exactly what a responsible company should do when it's considering introducing a new product. It identified the relevant field of art, did its own internal examination, hired outside counsel to take an independent look. Okay, so can we cut to the chase? Sure. I want to understand what your main concerns are with that because we've got so why don't you go through those in order of what you think is the worst part. Okay, so we got oral opinions before we introduced the products. Now the trial was before HALO, but obviously in the wake of HALO, what we knew at the time of working on the products is crucial. We got oral opinions beforehand. Chen was allowed to describe. We hired counsel. He looked at all these opinions. Is Chen an engineer? He is an engineer. He was a senior engineer at CalAMP. We got all these, you know, we looked at all these patents. He gave us opinions. Asked, okay, what did counsel tell you? What was your understanding based on counsel? Wait, I'm sorry. Are you talking about Chen's testimony? Chen's testimony. Yes, Your Honor. And objection hearsay, and the judge sustained the objection. He would not allow Chen to testify about the oral opinions. So then they put, and also Chen couldn't testify about his own analysis. Can I ask you about that, though? Because it came up in Bailey, too. What the judge allowed for Dr. Bailey was that he could testify about the ultimate conclusion he reached, but not the guts of the basis for that conclusion. Was that the same deal he reached with Chen, or he wasn't letting Chen even talk about what the conclusion was? Chen couldn't even talk about what the conclusion was. And with respect to Bailey, I think it's kind of debatable exactly what Bailey was allowed to say. He did say an opinion as to invalidity and an opinion as to not, but the judge had instructed that he was not to testify about the substance of his opinions. The jury heard that, so it's questionable what the jury may have even understood Bailey was telling. And that was about the written opinions, not the oral opinions. And it's clear that that was excluded because, first of all, the judge at appendix page 17 says advice of counsel was not allowed into evidence. At appendix page 46, note 14, he says, the court is unaware of the substance of the oral opinions allegedly provided prior to the introduction of the products. Well, that confirms that those bottom lines were not presented. The jury heard, the jury didn't hear anything the judge didn't hear. So if the judge was unaware of it, for sure the jury was unaware of it. Okay, so what's a judge to do in these circumstances? Because it does seem to me that if he allows extensive opinions about invalidity to be introduced in the guise of advice that they received about whether they could go forward with their product launch or whatever it was, that there's a risk of prejudice. So surely the district court has some control over the amount of testimony that's given about these oral and written opinions that occur before the event. Sure. Absolutely, Your Honor. But complete exclusion is not appropriate. But I don't understand. I'm looking at some of the testimony that's excerpted from this. I thought that Dr. Bailey did test, Mr. Bailey did testify when he was talking about the conclusion reached by the written opinion that that was reflected what his prior oral opinions were. So that testimony got in, right? Well, he was allowed to say that much, but apparently the judge didn't think that revealed the substance of the oral opinion. The judge didn't let him say what it was. Exactly. Not the substance, but the result. That was true of the written opinions, and wasn't that also true of the oral opinions? Well, it was. That he was allowed to say, I gave them information that based on my considered opinion, the claims were invalid. Well, what he actually was able to, the way that Bailey's testimony came in was they handed him the written opinions, and those were excluded on hearsay grounds, but we were allowed to show him the written opinions, and he was able to say, yes, this is a document reflecting my opinion, which I also had previously given of invalidity or of non-infringement. Period. With no analysis. And it's important to note that. You mean no analysis is how he reached the results? Right. And no even reflection that there was, no indication that there was any sort of considered judgment, and it's important. Considered judgment by whom? By Bailey in providing the opinions, and it's important, Your Honor, because in closing Omega made a big deal out of the fact to the jury that, well, you heard all about these stacks of patents, a big stack and a little stack, but you heard no analysis from Chen or from Bailey. So given this context, and Judge Teich, to your question, certainly a district court can exercise some control, and you don't want a trial devolving into just reading pages and pages of attorney opinions, but to completely cut it off the way the judge did. Could you show me where that closing argument appears? Is that with respect to the advice of counsel point? It is Omega's argument on willfulness, on willful infringement. Where is that? Hang on. I can dig that up for you. I would refer the court to the appendix pages 16, 7, 20. Which volume is this? I'm sorry? Which volume? Oh, good question. Volume 3 of 4, Your Honor. And it's 16, 7, 20 to 7, 22 is where this is being discussed. And this is Omega's argument on willful infringement. And what they say basically is, you know. You've got to give us the second part. Oh, sure. Sorry. 16, 7, 20. Okay. Go ahead. And what they're saying, what Omega's saying is you didn't hear any analysis from Chen. So which line is this on? 18. 18. Didn't hear any analysis of those patents. We just, I did a bunch of work. I worked really hard. And also, you know, they underscored the fact. They actually turned this, what should have been a sculptory testimony on its head, because of the inability to explain it, saying they knew about the patents. They looked at them. But you didn't hear any analysis, and they forged ahead anyway. And then at 722, I think it's 722. Yeah, so then they, and this is at line 15. So then they brought in Mr. Bailey, their attorney. Mr. Bailey came in and said, yeah, I've been working with Mr. Chen. I've been working on this big stack, little stack. And I agree. I agree with my partner, referring to trial counsel, who was from the same firm, that all these things must be either invalid or infringed. So they dismissed this precisely because the judge didn't allow any explanation. Can I ask you, was there a distinction between what was allowed, and I apologize if you've already said this, the difference between what he allowed for Chen and what he allowed for Bailey? Was Chen allowed to do at least as much as Bailey did, which is to say what the results of the opinion were? No, Chen was cut off completely on that subject, both as to Bailey's opinions and as to his own conclusions based on his review of the prior. Let me ask you, I don't want to be making your argument for you, but isn't that, I mean, if we're talking about willfulness, fine, whatever Mr. Bailey has to say, but at the end of the day the only inquiry in willfulness is what your client knew and thought. So no matter how much Bailey said, you needed to tie that into willfulness by having Chen acknowledge that he saw it and agreed with it, right? Exactly, Your Honor, and that's the heart of the problem. So I'm way over my time, I apologize for that. Okay, let me just check if there are any, was that the end of your numerous issues? Well, there are numerous, but we'd be here too long. Okay, all right, thank you. We'll reserve some rebuttal time. May it please the Court, Brian Gilchrist on behalf of Omega Patents. Mr. Gilchrist, on page 5 of the red brief, I have a little marginal note in there. You say Cal-Am failed to offer a live testimony of its engineers at trial. That's why I asked Mr. Trella, Mr. Chen's an engineer, isn't he? Yes, sir. So they did offer a live testimony. Not as the engineering portion. Mr. Chen was through videotape deposition, and he came later after the fact to offer the analysis type testimony, so the expert testimony was excluded. Not as to the engineering elements. Okay. I mean, the reason I have a marginal note is it says, when you said that I wrote a marginal note, isn't Chen an engineer? You have to be accurate enough. Oh, fair enough. I understand the Court's concern. Okay, so since we're talking about Mr. Chen, why don't you start with the willfulness issue that we discussed with Mr. Trella. Absolutely. Mr. Chen, and I think it's one of the key elements, and I think the Court was addressing it, is whether Cal-Am relied upon any such statement. And what Mr. Chen indicated was he was not the one making the decision to move forward with the product. So there's a lack of foundation that anybody relied upon any analysis in order to make the decision to move forward with the product. That wasn't the judge's ground for refusing to permit Chen to testify. His ground was hearsay, which seems to be wrong. Wait, wait, wait. He should not have excluded Chen's testimony about the opinion of counsel. It's hearsay, right? I disagree. Really? How could that be an appropriate reason for excluding him? It goes down to the details of how it was asked. I think what the Court said was he agreed it could be offered for the state of mind in 16301. That it could be offered for the state of mind, but the question that was asked in 16300 is, do you have an opinion as to whether counsel believed Theron French, which is absolutely a hearsay question and an appropriate objection. In the Court, as he was discussing this analysis. Counsel being who? Inside counsel? Mr. Bailey. Mr. Bailey. Okay. And so he was asking Mr. Chen what Mr. Bailey thought. Where is this question? Is this in 16301? 16300. 300. What line? I don't know. I don't know. Okay. Should not come as a surprise that we're going to. I just don't have the line for you. That's the problem. You're supposed to know it. Begin to 16299 line. 16299. Yes, sir. Line one. Line 21. And this is what this is Chen's testimony. Yes, ma'am. Well, but he says, did you have an understanding whether counsel believed? Right. In other words, what did he understand that counsel's belief was? Correct. And I believe that's an appropriate hearsay objection. That's Mr. Chen, what Mr. Bailey's opinions were. No, he asked him what his understanding of those opinions were. But Mr. Chen was not the person making the ultimate decision. But that's my point. It's not a proper hearsay objection. The question is, could it have been excluded on some other ground? Right? Yes. Yes, sir. It could have been excluded on lack of foundation. But nobody argued that. You didn't argue that. I did not argue at the time. The question was objected to on the basis of hearsay and not reword. Well, if it had been objected to on lack of foundation, then they could have laid the foundation for it. But they didn't have the opportunity to do that because you never made such an objection. Well, I think at 16301, the court explains his concern and constraints. And he says. And I agree with that. My concern is that under 80142, the opposing party's statement may be offered against the opposing party if it were made by the party in an individual or representative capacity. Yeah. Is one that the party had adopted or believed to be true was made by the party's agent. Right. So a lawyer would be perhaps an agent of the party, but it's not being offered against the opponent. So? So it would be my concern is it's a hearsay statement. The statements we have in this case. But it's offered to show Chen's state of mind. But Chen would not be the proper person. The state of mind would be relevant to the willfulness inquiry. But that objection wasn't made. Well, I understand that. Well, how can you come here and say, well, maybe the judge was wrong to exclude his hearsay. But there was another basis for excluding it that the judge didn't rely on and that you didn't argue. Well, again, I don't think it was I don't think the question was appropriate. That's hearsay. What did what did Mr. Bailey say? Well, isn't this sort of mooted by page 31 of the red brief at the bottom where you say Calamp engaged in detailed review of Omega patents? Yes, sir. They did review the patents and that was brought out during trial. That's what that's what Bailey's testifying, isn't it? Yes, sir. That he had the opportunity to review it and that he reached conclusions about the review. And what's missing from any analysis and what's missing from the heart of this willfulness dispute is what did Calamp rely upon when it moved forward with a decision to offer the LMUs for sale? And we don't have any testimony in that regard. You don't have testimony because Chen wasn't permitted to testify. Chen testified that he wasn't the one that made the ultimate decision. He did offer that testimony. So we're missing the next step. Who made the decision to move forward on the willfulness claim in light of whatever opinions they had? And what were those decisions based upon? On the willfulness thing, you agree that if we hold that there has to be a new trial on any of these claims or the JMO should have been granted on any of these claims that the willfulness conclusion has to be set aside, right? I believe that according to what the decisions of this court are, that is accurate. I don't necessarily agree with those decisions, but I live with those decisions and I agree with that aspect of it. On page 43 of the red brief, you say Calamp does not contest that the excluded testimony falls within the disclosure requirements of Rule 26 in the court's pre-trial orders. What's the record basis for the statement that they don't contest it? That they had not raised it in their initial brief. They did not contend at the time that Chen was offered that he had been identified as a Rule 26 expert. There was no Rule 26 expert disclosure in the pre-trial statement. He was not identified as an expert in the Rule 26 pre-trial statement. So what? He's not being offered as an expert. He's being offered as a corporate representative and the question is what did he understand about infringement and validity? I believe he was being offered as an expert. I think that was the underlying problem. His analysis of certain patents and a lot of the patents that were precluded from their expert. He wanted to talk about his analysis of the patent to show the company's state of mind that existed before the infringement, right? I do not believe that's why he was offered for that purpose. He didn't put a date or time frame. Where does it say for what purpose he was offered? There was no explanation on behalf of the defendant on why he was offered. There was an objection made. He wasn't offered as an expert then. I believe he was. I think that was the point. They didn't say he was being offered as an expert. He wasn't being offered as an expert. When the objection as to the expert was raised that he was being offered as an expert, they didn't come back and say no, he's not being offered as an expert. Where do we find that? I don't have the site for that, sir. You should know your record when you come here. Yes, sir. It would be in 16297 is what my notes reflect, but I don't have an accurate citation for the court. You have an argument at page 54 of your brief that says, I'm going to read the whole paragraph. After Mr. Flake met with Representative Calamp in 2009 and advised Calamp it was infringing Omega's patents, Mr. Chen requested a license agreement. A fact finder could infer Calamp's analysis at that time that it was infringing and needed a license. Calamp thereafter refused to sign the license, not because the patents were invalid or not infringed, but because Calamp falsely claimed it did not program the systems. A fact finder could interpret Calamp's false claim as a reaction to counsel's oral conclusion that the patents were invalid and infringed. What's your basis for that other than your speculation? You're saying the jury might have? Certainly, yes. I'm entitled to the reasonable inferences on what the evidence revealed. I'm discussing what the evidence was and what a reasonable jury could infer from that evidence to reach their ultimate conclusions. Calamp says on page 57 of the blue brief that the court never explained the basis of its theory that although Bailey reviewed the patents, he gave his clients no opinion about them. Is there any basis in the record? I'm sorry, page 57? Of the blue brief, yeah. I'm giving you a chance to say they're wrong. Okay, if I could find where the court was looking again, I'll say they're wrong. I'm sorry. The portion that they're saying. I'm saying that if you look at page 57 of the blue brief, they say the court never explained. Where did the court explain? I'm not asking you for a flip answer. I'm giving you an opportunity. Yes, sir, I understand. I'm not sure I have an opposition to that, sir. All right. If there are no other questions, I'll see the rest of my time. Well, I have some other questions. Okay. Calamp says on 58, it would have been enormously expensive to commission formal opinions about every one of the 300 patents and cites to HALO, which says opinions of counsel can easily cost up to $100,000 per patent. I'm told that might even be low. Do you agree with that number, $100,000 per patent? I don't agree that it's $100,000 per patent, but I have no record citation. But the point that I would make is that if Mr. Bailey had conducted that analysis, that money was already sunk. It takes very little additional time or effort to put such an analysis into a written format. That's the point I think the court was trying to make. I don't know. I practiced law. Getting a written opinion is quite a bit different. Fair enough. Thank you. We'll give you a couple minutes. I have one question just based on what the discussion was here on Mr. Chen. The argument seems to be that since he wasn't identified as the decision maker for your client, then we don't care what he knew, what he thought, because he wasn't deciding anyway. So it's not probative of willfulness. What's your response to that? My response is that that's completely made up. You didn't hear a record cite here. If you look in their brief where they make that argument, you're not going to find a record cite because it's not true. Where's the record cite where he describes what he does and suggests that he has some decision-making authority with respect to what the company does? I refer the court to page 28 of the gray brief, and I'm not going to read all the record cites, but he was the senior engineer. He testified that he was directly involved in the decision-making process. He testified that he's the one the company dispatched to look at this to find out what the company thought about it. So this notion that somehow this evidence could be excluded because he's just some foreigner to this process is just completely made up. He was integral to the process, and to suggest that at a corporation, non-engineers are going to be making the decision completely independent of the advice the engineers are giving them, it's completely illogical besides being unsupported by the record. A couple of other points. Judge Wallach, you asked about, I think, a reference at page 54 of the red brief. Among other problems, all of that stuff refers to actions in 2009 involving different patents and different products that had to do with this unrelated Sky Patrol matter. It was a Cal-Am customer, so I shouldn't say completely unrelated, but different products. The LNUs at issue here weren't even introduced until 2011. Bailey didn't even look at these patents until 2010. One of them didn't even issue until after that. So not only are there other problems with it, but it's completely irrelevant to this case. There was a question about whether Cal-Am ever explained the purpose for which Chen was being offered. I'd refer the court to appendix pages 16 to 11 to 213 where trial counsel explained we're not presenting him as an expert. It's offered to show state of mind. It's not offered to show that the patents are in fact invalid or not infringed. We didn't identify him as an expert. Well, there you go. We did identify him as a witness, and so this notion that we didn't give the judge a clue of what we were doing, that's just, again, made up. If the court has no other questions. Thank you. We thank both sides, and the case is submitted.